IRELL & MANELLA LLP
Morgan Chu (SBN 70446)
(mchu@irell.com)
Jonathan S. Kagan (SBN 166039)
(jkagan@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

David C. McPhie (SBN 231520)
(dmcphie@irell.com)
Nima Hefazi (SBN 272816)
(nhefazi@irell.com)
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

*Attorneys for Defendant*
*JUNIPER NETWORKS, INC.*

*Additional Counsel Listed on Signature Pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT NETWORKS, INC., | ) Case No. 3:10-cv-4234-SI |
| Plaintiff, | ) |
| | ) **JOINT STATEMENT REGARDING** |
| vs. | ) **JUNIPER'S MOTION TO COMPEL** |
| | ) **IMPLICIT TO PROVIDE DISCLOSURES** |
| | ) **PURSUANT TO PATENT LOCAL RULES** |
| JUNIPER NETWORKS, INC., | ) **3-1(C) AND 3-2(A)** |
| | ) |
| Defendant. | ) Action filed:   September 20, 2010 |
| | ) |

**A.      Summary of Dispute and Relief Requested**

Defendant Juniper Networks, Inc. ("Juniper") moves the Court for an order compelling Plaintiff Implicit Networks, Inc. ("Implicit") to, within fourteen days of the Court's order:

1.  Provide infringement contentions with pinpoint citations to Juniper's source code supporting its allegations regarding the alleged location of each limitation of the asserted claims, pursuant to Patent L.R. 3-1(c); and

2.  Identify and produce documents sufficient to evidence any public use or communication with third parties relating to the claimed invention prior to December 29, 1999, pursuant to Patent L.R. 3-2(a).

The parties met and conferred but ultimately reached an impasse on these issues.

**B.      Juniper's Position**[1]

       1.      <u>Implicit Cannot Indefinitely Withhold Its Source Code Citations</u>

As Implicit now concedes, when a party claims patent infringement based on the operation of software, it is required to "supplement [its] infringement charges with pinpoint citations" to the accused software code "[o]nce [that] source code has been provided." *See, e.g.*, *Vasudevan Software, Inc. v. IBM*, 2011 U.S. Dist. LEXIS 33132, at *23 (N.D. Cal. Feb. 18, 2011). A patentee can delay this obligation only if it can prove that it has not yet had a "reasonable opportunity" to review the code, notwithstanding having proceeded in a "diligent or expeditious manner." *Big Baboon Corp. v. Dell, Inc.*, 723 F.Supp.2d 1224, 1229 (C.D. Cal. 2010). Implicit fails to satisfy its burden of proving that any further delay is warranted here.

Juniper first made its source code available to Implicit on September 9, 2011—over five months ago.[2] Implicit spent about 4½ weeks reviewing this code. At the conclusion of its review (October 20, 2012), Implicit requested printed copies of nearly 400 pages of Juniper source code files, on the basis that those files "describe the functionality . . . and data structures" that Juniper allegedly "employs for infringing operation." Juniper duly provided these pages to Implicit.

After allowing a reasonable time for Implicit to analyze the printed code files and to conduct any additional review it deemed necessary, Juniper requested that Implicit disclose its

---

[1] While deficiencies exist in Implicit's Patent Rule disclosures other than the two set forth below, Juniper yet hopes to resolve the others without Court intervention.

[2] To facilitate review, Juniper provided industry-standard software tools, including specific software that Implicit had requested, to the extent possible without compromising security.

pinpoint citations to the allegedly infringing code.[3]  Implicit initially claimed it was not obligated to do so.  Faced with this motion, however, Implicit changed course and now asserts that, although it **will** disclose its source code citations at some unspecified date in the future, it is **currently** entitled to withhold them.  But as explained above, the obligation to provide code pincites is triggered by "reasonable opportunity," and Implicit has not met its burden of proving that the over five months of opportunity it has already had to review the code is anything less than reasonable.  *See Big Baboon,* 723 F.Supp.2d at 1229 (compelling code citations where patentee "failed to [show] that four months was unreasonable"); *Vasudevan,* 2011 U.S. Dist. LEXIS 33132, at *22 (same; request made three months after code made available).[4]

Like the plaintiff in *Big Baboon*, Implicit also attempts to justify further delay by pointing to the size of the code database, alleged inadequacy of the review environment, and a claim that materials were not produced that are "essential to understanding the code."  723 F.Supp.2d at 1226.  But the court in *Big Baboon* rejected these arguments and found that it was the **patentee** that had failed to conduct its review "in a diligent or expeditious manner."  *Id.* at 1229-30.  And so it is here; Implicit offers no explanation for its voluntary decision to stop its review after just 4½ weeks (where the code has been available for over five months).[5]  Indeed, Implicit asked to resume its review only *after* Juniper made its request for pinpoint citations last month.  Implicit's lack of diligence is no reason for further delay.  The code citations should be disclosed now.

      2.   <u>Implicit Must Identify Documents Relevant To Its Patent Embodiment</u>

Patent L.R. 3-2(a) requires patentees to produce **and** identify ("by production number"):

> (a) Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit.

---

[3] Juniper did not request code citations when Implicit first served its contentions in May 2011 because it knew that Implicit had not yet had the opportunity to review the accused code.

[4] Implicit recently told the Court that its source code review is "well underway."

[5] Implicit claims it stopped its review so it could file a motion regarding the code review software.  But no such motion ever materialized.  Instead, Implicit delayed for months before raising the issue again, at which point the parties resolved the matter without Court intervention.

1    Implicit has failed to identify and produce any such documents—claiming there are "[n]one to

2    produce"—based on a gross misreading of Rule 3-2(a).

3        During its technical tutorial presented on January 17, 2012, Implicit alleged its first patent

4    embodiment was "up and running by summer of 1997"—well before the patent filing date of

5    December 29, 1999.  It defies reason to think that Implicit waited 2½ years to tell anyone about

6    this embodiment.  And because Implicit contends this embodiment contained every limitation of

7    an asserted patent claim, any "discussion with" or "disclosure to" a third party of that embodiment

8    must be identified under Patent L.R. 3-2(a)—including evidence that may not itself expressly set

9    forth every technical limitation of the embodied claim.  Indeed, the Rule expressly cites business

10   documents such as "contracts, purchase orders, invoices, advertisements, marketing materials,

11   [and] offer letters," which rarely contain such level of technical detail.  Thus, documents about the

12   embodiment (*e.g.*, a letter suggesting possible sales terms or an external email disclosing its

13   operational features in a network environment) fall directly within the scope of the Rule.

14        Implicit nevertheless claims that it may withhold from its Rule 3-2(a) disclosure all

15   documents that do not ***themselves*** expressly disclose, within their four corners, every limitation of

16   an asserted patent claim.  Thus, under Implicit's interpretation, the letter and email examples

17   above would ***not*** be disclosed, even though they constitute significant supporting evidence of an

18   invalidating sale, offer for sale, public use, or disclosure.  Implicit's improper, narrow reading

19   would thwart the purpose of the Rule, which is designed to prompt disclosure of invalidity

20   evidence under a broad "relelvan[ce]" standard (per the law review article Implicit cites below).

21        Finally, Implicit claims (somewhat paradoxically) that, although there are "no[]

22   [documents] to produce" under Rule 3-2(a), in fact all such documents have ***already*** "been

23   produced."  Even if that were true, Implicit has failed to "separately identify by production

24   number which documents" are responsive to Rule 3-2(a), as expressly required by the Rule.

25      **C.**      **Implicit's Position**

26          1.     <u>Implicit Has Agreed to Provide Citations to Source Code.</u>

27        The issue presented here is not *whether* Implicit will provide pinpoint source code

28   citations, but *when*: Juniper suddenly, and post-claims hearing, demanded that Implicit add such

1  citations, and iteratively as its review continues, while Implicit said it would add pinpoint citations

2  30 days after its source code concluded.

3        Five things matter here:

4        **First**, Juniper says that Implicit changed course.  Indeed, it did: in an effort to resolve this

5  dispute, Implicit sent Juniper counsel a letter on February 21, 2012, agreeing to add pinpoint

6  citations 30 days after its source code review concluded.  Juniper rejected this compromise,

7  insisting that the source code citations be provided immediately.  Implicit should not be penalized

8  for trying to resolve this issue.

9        **Second**, Implicit's source code review is ongoing, as Juniper knows well.  Juniper long

10  delayed Implicit's source inspection, and then denied Implicit the tools Implicit wanted -- there are

11  literally dozens of letters so documenting.  Juniper insisted that Implicit's reviewer instead use one

12  inefficient tool, a tool that would not permit multi-file dynamic searching.  Given the massive size

13  of the Juniper code base, a stack of code 50 stories high were it printed,[6] this review is ongoing.

14        **Third**, it is not true that Implicit only asked for continuing review after Juniper's January

15  23, 2012 demand for source citations.  By letter dated October 21, Implicit underscored the tool

16  issue and continuing review:

17            As a result of JNI's arbitrary and highly unreasonable limits on
    search tools, along with the enormous size of the code base for
18            several accused products - over 120 Gigabytes - review is not near
    completed.  This is far too expensive, and has taken too long.  **As a**
19            **result, we will be temporarily interrupting our source code review**
20            **after tomorrow, October 21.**  Pursuant to the Judge's standing
    order, we will meet and confer with JNI before taking this matter
21            to the court.

22  Bishop to Hefazi, October 20, 2011 (emphasis added).  And from late October forward, the parties

23  were consumed by claims briefing and hearing.

24        **Fourth**, Implicit has been diligent in its source code review.  Given the size of the code,

25  Implicit retained two additional code reviewers, Implicit will have three people involved in the

26  review as of March 6 forward.

27  _____

28      [6]  Engineers can be funny.  The Implicit reviewer reports there were 123 gigs of code, and that just one version of the JUNOS OS was 4.6 gigs, which translates to 16.8 million lines of source, or over two million pages, which would make a stack of paper 54 stories high if printed.

**Fifth**, Implicit filed its Infringement Contentions in May of last year.  *At no time until January 23 of this year, eight months later, did Juniper complain.*  It now says (in correspondence) that its six lawyers were too busy on other cases to review the Contentions earlier.  Then, in the week following the claims hearing, Juniper suddenly demanded that Implicit add pinpoint source citations to its Contentions.    This is all about a new post-claims litigation strategy (*e.g.*, the new re-exam and stay motion) and not remotely a good faith complaint.

     2.    <u>Implicit Has Complied With P.L.R. 3-2(a)</u>.

Implicit agrees with Juniper that "contracts, purchase orders," and similar documents that evidence a "sale of or offer to sell, or any public use of the claimed invention" (P.L.R. 3-2(a) need to be identified, to the extent "sufficient to evidence" such sale, etc.  The rule is designed to surface invalidating prior use and on-sale bar documents.

Where the parties differ is that Juniper takes misreads Patent Local Rule 3-2(a) in its insistence that the rule requires identification of any document evidencing "discussion" or "disclosure" to a third party of even a **single** element of a claimed invention.  Juniper's reading would require Implicit, for example, to identify any prefiling document where Implicit discussed any of the thousands of existing computer systems that could receive packets of a message, because that is a limitation claimed in the asserted Implicit Patent No. 7,711,857.  Implicit has repeatedly asked Juniper (most recently by letter on February 10) to provide it with any authority supporting its reading of the rule.  Juniper has never provided it, either to Implicit, or in its briefing to this Court – because there is none to be found.  As Chief Judge Ware has written in explaining the Northern District of California's Patent Local Rules, "Rule 3-2(a) requires the patentee to provide documents relating to any invention disclosures the patentee made to third parties prior to filing the application for the patent being asserted."   Ware, James, and Brian Davy, *Santa Clara Computer & High Tech Law Journal*, Vol. 25: 988 (2009).  This clearly relates to public disclosure of the invention, not of one element of an invention.

Implicit did not have a commercial product ready to sell until the 2000 Consumer Electronics Show, held in February 2000, and has so told Juniper in writing, repeatedly.  Any "prototypes" earlier were just that – prototypes.

- 5 -

1   DATED: February 24, 2012                      Respectfully submitted,

2
                                             By:  */s/ Nima Hefazi*_____
3                                                 Morgan Chu (SBN 70446)
                                                  (mchu@irell.com)
4                                                 Jonathan S. Kagan (SBN 166039)
                                                  (jkagan@irell.com)
5                                                 IRELL & MANELLA LLP
                                                  1800 Avenue of the Stars, Suite 900
6                                                 Los Angeles, California 90067-4276
                                                  Telephone:  (310) 277-1010
7                                                 Facsimile:  (310) 203-7199

8
                                                  David C. McPhie (SBN 231520)
9                                                 (dmcphie@irell.com)
                                                  Nima Hefazi (SBN 272816)
10                                                (nhefazi@irell.com)
                                                  840 Newport Center Drive, Suite 400
11                                                Newport Beach, California 92660-6324
                                                  Telephone:  (949) 760-0991
12                                                Facsimile:  (949) 760-5200

13
                                                  *Attorneys for Defendant*
14                                                *JUNIPER NETWORKS, INC.*

15

16
                                             By:  */s/ Spencer Hosie*____
17                                                Spencer Hosie (SBN 101777)
                                                  (shosie@hosielaw.com)
18                                                George F. Bishop (SBN 89205)
                                                  (gbishop@hosielaw.com)
19                                                HOSIE RICE LLP
                                                  Transamerica Pyramid, 34th Floor
20                                                600 Montgomery Street
                                                  San Francisco, California, 94111
21                                                Telephone:  (415) 247-6000
                                                  Facsimile:  (415) 247-6001
22

23                                                *Attorneys for Plaintiff*
                                                  *IMPLICIT NETWORKS, INC.*
24

25

26

27

28

2493383
JOINT STATEMENT REGARDING JUNIPER'S MOTION TO COMPEL IMPLICIT TO PROVIDE
DISCLOSURES PURSUANT TO PATENT LOCAL RULES 3-1(C) AND 3-2(A)

1

## **CERTIFICATION PURSUANT TO GENERAL ORDER 45**

2       I hereby attest pursuant to General Order 45X.B, that concurrence in the electronic filing of

3   this document has been obtained from the other signatories.

4       DATED:  February 24, 2012

5                                                              */s/ Nima Hefazi*

6                                                              Nima Hefazi

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2493383